IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07–cv–01459–WYD–KMT

GREGORY BLUE,

     Plaintiff,

v.

FEDERAL POSTAL INSPECTOR SKAFETTIE,
FEDERAL POSTAL INSPECTOR JOHN DOE 2,
COLORADO SPRINGS POLICE OFFICER JOHN DOE 1,
COLORADO SPRINGS POLICE OFFICER JOHN DOE 2,
COLORADO SPRINGS POLICE OFFICER JOHN DOE 3,
COLORADO SPRINGS POLICE OFFICER JOHN DOE 4,
COLORADO SPRINGS POLICE OFFICER JOHN DOE 5,
COLORADO SPRINGS POLICE OFFICER JOHN DOE 6, and
COLORADO SPRINGS POLICE OFFICER D. MORK 1763,

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Kathleen M. Tafoya**

     This case is involves claims that Defendants violated his Fourth and Fourteenth

Amendment rights.  This matter is before the court on Defendant Police Officer D. Mork's

"Motion for Summary Judgment"  (Doc. No. 73).  Jurisdiction is premised upon 28 U.S.C. §

1983 (2007) and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S.

388 (1971).

**STATEMENT OF THE CASE**

The following facts are taken the Complaint and the parties' submissions with respect to this Recommendation.  There is no genuine issue with respect to the following facts.  On July 28, 2006, Defendant Mork, a police officer with the Colorado Springs Police Department, was dispatched to a Wal-Mart store regarding a fraud in progress.  ("Br. in Supp. of Mot. for Summ. J. [hereinafter "Br."] [filed June 23, 2009], Ex. A, Aff. of Daniel Mork, ¶¶ 1, 3.)  Upon his arrival at Wal-Mart, Defendant Mork contacted security clerk Dave Watkins.  (Br., Ex. A.,¶ 3.)  Mr. Watkins informed Defendant Mork that an individual named Troy Mitchem attempted to pass a forged check.  (*Id.*, ¶ 4.)  Mr. Watkins showed Defendant Mork photographs of Mitchem, a female suspect who had previously passed a similar check, and her vehicle.  (*Id.*,¶ 6.)  The female suspect's vehicle was a dark colored Buick with temporary tags.  (*Id.*)

Defendant Mork ran the name of Troy Mitchem through NCIC/CCIC and found that Mitchem most recently had lived with his mother, Sharon Mitchem.  (*Id.*,¶ 8.)  Defendant Mork contacted Sharon Mitchem, who confirmed that the suspect in the Wal-Mart photo was her son, Troy Mitchem.  (*Id.*,¶ 9.)  On August 1, 2006, Defendant Mork received a voice mail message from Sharon Mitchem, advising she had received a voice mail message from Wells Fargo Bank that Troy Mitchem's driver's license or ID was left at the bank.  (*Id.*, ¶ 11.)  In the voice mail message, Sharon Mitchem also provided a possible address and cell phone number for Troy Mitchem.  (*Id.*)

Defendant Mork responded to the Wells Fargo Bank and was informed that an individual had attempted to pass a check with the payee being Troy Mitchem.  (*Id.*,¶ 12.)  Defendant Mork

called Troy Mitchem and left a message that he was from Wells Fargo Bank and was attempting to return his ID.  (*Id.*,¶ 13.)  When Troy Mitchem arrived at the Wells Fargo Bank,  Defendant Mork arrested him for passing forged checks.  (*Id.*, ¶ 14.)

Defendant Mork showed Troy Mitchem the photographs from the Wal-Mart store, and Mitchem identified the female suspect as being PolleaAnne Blue and identified the Buick Ms. Blue was driving as belonging to her husband, Gregory Blue, whom Mitchem described as a bald, black male in his 40s, approximately 6 feet tall, weighing 170 to 180 pounds.  (*Id.*, ¶ 16.) Mitchem stated that Mr. Blue was in possession of several forged checks and that he participated in printing the forged checks.  (*Id.*, ¶ 17.)  Mitchem did not have an address for Blue; however Mitchem provided Blue's cell phone number.  (*Id.*,¶ 17.)

Mitchem agreed to call Blue to attempt to get his address.  (*Id.* at ¶ 18.)  Mitchem then called Blue.  (*Id.* at ¶ 18; Ex. B. Dep. of Gregory Blue at 54, ll. 16-25; 55, ll. 1-14 and 24-25; 56 ll. 1-4; Ex. C, Depo. of PolleaAnne Blue at 20, ll. 21-22; 21, ll. 7-9; 57, ll. 18-20.)  Blue told Mitchem that he lived in Apartment 303 in a complex near the intersection of Nevada and St. Elmo near a McDonald's restaurant.  (Ex. A, ¶ 18.)  Defendant Mork was familiar with that apartment complex and knew the address to be 1808 St. Elmo Ct.  (*Id.*, ¶ 18.)  Defendant Mork ran Gregory Blue's name through the Department of Revenue and NCIC and discovered that Gregory Allan Blue, DOB 12/24/61, had several outstanding arrest warrants.  (*Id.*, ¶ 19; Exs. D, E, F, G, H and I.)

Defendant Mork and several other Colorado Springs police officers went to 1808 St. Elmo Ct.  (Ex. A,¶ 20.)  Upon his arrival, Defendant Mork observed a blue 1992 Buick

3

matching the vehicle identified by Mitchem as belonging to Gregory Blue parked in front of the apartment complex.  (*Id.*, ¶ 21.)  Sgt. Buckley contacted the manager at 1808 St. Elmo Ct. and was informed that a bald, black male in his 40s was residing in Apartment 303.  (*Id.*,¶ 22.) Defendant Mork then made a call to Blue's cell phone but received no answer.  (*Id.*, ¶ 23; Ex. C at 24, ll. 7-12; 58, ll. 2-25.)  At the same time Defendant Mork called Blue's cell phone, officers could hear a phone ringing inside Apartment 303.  (Ex. A, ¶ 23.)

The officers then attempted to contact Blue by knocking on the door of Apartment 303 and announcing their presence; however, no one answered the door.  (*Id.* at ¶ 24; Ex. B at 57, ll. 23-24; 58, ll. 13-24; Ex. C at 23, ll. 20-24; 58, ll. 2-25.)  The police officers then entered Apartment 303 and took Blue into custody.  (Ex. A, ¶¶ 27 and 28.)

Two claims remain in this case.[1]  In Claim One, Plaintiff asserts that Defendants violated "Plaintiff's constitutional rights of protection from unreasonable search and seizure by breaking into the [p]laintiff's apartment . . . without a valid search warrant, proper probable cause or exigent circumstances . . . ."  (Am. Prisoner Compl. at 9 [hereinafter "Compl."] [filed December 27, 2007].)  Plaintiff alleges the officers arrested him and his wife, removed him from his apartment, and conducted a search of the apartment.  (*Id.*)

---

[1]Senior District Judge Zita L. Weinshienk dismissed claims two, three, and four and certain of the defendants in her Order to Dismiss filed on February 8, 2008.  (Doc. No. 26.) Chief District Judge Wiley Y. Daniel dismissed Defendant City of Colorado Springs and some of the claims against Defendant Scaffidi in his Order Affirming and Adopting United States Magistrate Judge Recommendation on March 25, 2009.  (Doc. No. 66.)

In Claim Five, Plaintiff asserts he has been deprived of life, liberty, and property without due process of law and also has been denied equal protection of the law.  (*Id.* at 12.)  Plaintiff states his equal protection was denied because the law enforcement officers, whose duty it is to enforce the laws equally to all citizens, broke into his home.  (*Id.*)  Plaintiff alleges he was "physically assaulted, kidnapped and he was administered treatment which fell far short of due process or being equally protected."  (*Id.*)

Plaintiff seeks damages, the return of seized property, an apology from the defendants, and a federal investigation of other cases for possible violations of state and federal law.  (*Id.* at 14.)

Defendant Mork moves for summary judgment on the bases that (1) he is entitled to qualified immunity; and (2) Plaintiff's claim against him in his official capacity must be dismissed as a matter of law.  (Mot. for Summ. J. [hereinafter "Mot."] [filed June 23, 2009]; Br.; "Supplemental Br. in Supp. of Mot. for Summ. J. [hereinafter "Supplemental Br."] [filed September 23, 2009].)

## PROCEDURAL HISTORY

Plaintiff filed his Complaint on December 27, 2007.  (Compl.)  Defendant Mork filed his motion for summary judgment on June 23, 2009 (Mot.; Br.) and his supplemental brief in support of the motion on September 23, 2009 (Supplemental Br.).  No response or reply has been filed.  This motion is ripe for review and recommendation.

## STANDARD OF REVIEW

### 1.  Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").  The plaintiff's *pro se* status does not entitle him to application of different rules.  *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### 2.  *Summary Judgment Standard*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

6

fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

## ANALYSIS

### 1.    *Qualified Immunity*

Defendant Mork asserts his entry into Plaintiff's residence was constitutionally permissible, and, therefore, he is entitled to qualified immunity. (Br. at 8–11.) The doctrine of

qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 121 (2001).

Because of the underlying purposes of qualified immunity, courts address qualified immunity questions differently from other summary judgment decisions. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, who must meet a "heavy two-part burden." *Id.* Plaintiff first must establish that the facts, taken in the light most favorable to Plaintiff, show that the officer's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. If Plaintiff establishes a violation of a constitutional or statutory right, "the next, sequential step is to ask whether the right was clearly established." *Id.* This determination must be made "in light of the specific context of the case, not as a broad general proposition." *Id.* "[T]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. If the plaintiff fails to satisfy either part of this "heavy two-part burden," the court must grant the defendant qualified immunity and dismiss the deficient claims.

In a recent opinion, the United States Supreme Court altered somewhat the analytical process that may be used when a defendant claims the protection of qualified immunity.

*Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808 (2009).  In *Pearson*, the Supreme Court held

that the sequential two step analysis mandated in *Saucier* should no longer be regarded as

mandatory.  The judges of the district courts and the courts of appeals should be permitted to

exercise their sound discretion in deciding which of the two prongs of the qualified immunity

analysis should be addressed first in light of the circumstances in the particular case at hand.

*Pearson*, ___ U.S. ___, 129 S. Ct. at 818.  The Supreme Court noted, however, that the sequence

set forth in *Saucier* often is the appropriate analytical sequence.  *Id.*

Here, Plaintiff claims that Defendant Mork violated his "constitutional rights of

protection from unreasonable search and seizure by breaking into the [p]laintiff's apartment . . .

without a valid search warrant, proper probable cause or exigent circumstances . . . ." (Am.

Prisoner Compl. at 9.)  Under *Payton v. New York*, 445 U.S. 573 (1980) a warrantless entry into

a home is presumptively unreasonable, but law enforcement officers may enter a home to

execute a valid arrest warrant when the officers can "demonstrate a reasonable belief that the

arrestee lived in the residence, and a reasonable belief that the arrestee could be found within the

residence at the time of entry." *Valdez v. McPheters*, 172 F.3d 1220, 1224 (10th Cir. 1999).

First, it is uncontested that prior to Defendant Mork's entry into the home, Defendant

Mork confirmed the existence of several outstanding arrest warrants.  (*Id.*, ¶ 19; Exs. D, E, F, G,

H and I.)  Additionally, Defendant Mork had a reasonable belief that Blue lived in the home.

Blue had told Mitchem that he was living in Apartment 303.  (Ex. A, ¶¶ 18, 25.)  Blue also told

Mitchem where the apartment complex that he lived was located (*id.*, ¶ 18), and the apartment

9

manager confirmed that a person matching the description of Blue was living in Apartment 303 (Ex. A, ¶¶ 16, 22, and 25).  Accordingly, the first prong of *Payton* is satisfied.

Second, Defendant Mork had a reasonable belief that Blue was in the apartment.  "Direct surveillance or the actual viewing of the suspect on the premises is not required."  *Valdez*, 172 F.3d at 1226.  Here, Blue told Mitchem he was at Apartment 303.  (Ex. A, ¶¶ 18, 26.)  Further, when Defendant Mork called Blue's cellular telephone, a corresponding ring could be heard inside Apartment 303, indicating Mr. Blue's cell phone was inside, and likely Blue as well.  (*Id.*, ¶¶ 23, 26.)  In addition, a vehicle matching the vehicle identified by Mitchem as belonging to Blue was in front of the apartment complex.  (Ex. A, ¶¶ 21, 26.)  *See United States v. Morehead*, 959 F.2d 1489, 1496 (10th Cir. 1992) (presence of an automobile gave reason to believe that suspect was on the premises).  Finally, between the time Mitchem was told by Blue where he lived and when the officers arrived at the apartment complex, approximately only thirty to forty-five minutes had elapsed, indicating it was likely Blue was still present inside.  (Ex. A, ¶¶ 20, 26.)  Therefore, the second prong of the *Payton* test is satisfied.

Accordingly, as Plaintiff has failed to establish Defendant Mork's conduct violated a constitutional right, *see Saucier*, 533 U.S. at 201, Defendant Mork is entitled to qualified immunity, and summary judgment should be granted for Defendant Mork and against Plaintiff on the first claim for relief.

**2.      *Claim 5 Against Defendant Mork in his Official Capacity***

In Claim 5 of the Complaint, Plaintiff alleges he was deprived of life, liberty and property without due process of law, and that he was denied equal protection of the law because his home

was broken into by members of the law enforcement community.  To the extent Plaintiff asserts a claim against Defendant Mork in his official capacity, Plaintiff has failed to state a claim upon which relief may be granted.[2]  A claim against a municipal officer in his official capacity is the same as a claim against the municipality itself.  *Watson v. City of Kansas City*, 857 F.2d 690, 695 (10th Cir.1988) ("A [§ 1983] suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same.") (citations omitted).  When a plaintiff seeks to recover damages from an official in his or her official capacity or from a department of a governmental entity, the plaintiff's suit is one against the governmental entity alone.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Accordingly, Plaintiff's cause of action against Defendant Mork in his official capacity is construed as a cause of action against the City of Colorado Springs.  Chief Judge Daniel has previously dismissed Plaintiff's claims against the City of Colorado Springs for failure to state a claim upon which relief can be granted.  (*See* Doc. No. 66 at 2.)  Accordingly, summary judgment is properly granted in favor of Defendant Mork and against Plaintiff on Claim 5 asserted against Defendant Mork in his official capacity.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that Defendant Police Officer D. Mork's "Motion for Summary Judgment" (Doc. No. 73) be GRANTED, and that the claims against Defendant Mork be dismissed in their entirety, with prejudice.

---

[2]Chief Judge Daniel previously dismissed the individual capacity claims asserted against all defendants in Claim 5.  (*See* Doc. No. 61; Doc. No. 66.)

**ADVISEMENT TO THE PARTIES**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *U.S. v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review);  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United*

12

*States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 28th day of October, 2009.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge